**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RTV ENGINEERING, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| vs. | § | CASE NO. 4:26-cv-03600 |
| | § | |
| | § | |
| SHIPCOM FEDERAL SOLUTIONS, LLC | § | |
| and SHIPCOM WIRELESS, INC. | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff RTV Engineering, Inc. ("RTV") files this Original Complaint, complaining of defendants Shipcom Federal Solutions, LLC and Shipcom Wireless, Inc., and would respectfully show the Court the following:

## I.    JURISDICTION AND VENUE

1.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of, and with its principal place of business in, the State of Wyoming. Defendant Shipcom Federal Solutions, LLC is a Delaware limited liability company whose members, upon information and belief, are domiciled in Texas. Defendant Shipcom Wireless, Inc. is a Delaware corporation whose principal place of business is in Texas. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Furthermore, this Court has supplemental jurisdiction over state law claims herein pursuant to 28 U.S.C. § 1367, as these claims for relief arise out of a common nucleus of operative facts.

2.      Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to the forum selection clause permitting this venue within the contract between RTV and Shipcom that serves as the basis of this action.

## II.    PARTIES

3.      RTV Engineering, Inc. is a corporation organized under the laws of the State of Wyoming, where it maintains its principal place of business.

4.      Shipcom Federal Solutions, LLC ("Shipcom Federal") is a limited liability company organized under the laws of the State of Delaware. Shipcom Federal is authorized to conduct business in the State of Texas, and its principal place of business is in Texas. Shipcom Federal can be served through its registered agent, Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

5.      Shipcom Wireless, Inc. ("Shipcom Wireless") is a corporation organized under the laws of the State of Texas. Shipcom Wireless is authorized to conduct business in the State of Texas, and its principal place of business is in Texas. Shipcom Wireless can be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## III.    RELEVANT FACTS

6.      RTV was established in 2010 by Robert T. Veiga as a minority owned, self-funded small business focused on engineered radio frequency ("RF"), AIT ("Automatic Identification Technology"), and communications system development. The company's first operational year centered on product design, embedded systems

architecture, and hardware validation. RTV released its initial hardware platforms in 2012. Today, it has multiple employees and offices in three states.

7. When a company or governmental entity seeks to accurately track its assets and secure actionable data for future use, RTV is uniquely positioned to build a customized solution tailored to that company's needs and circumstances. Since its founding, RTV has consistently delivered high quality services across several industries, from agriculture to aerospace to defense, helping each of its customers maximize efficiency and increase outputs through custom integration solutions. RTV's growth reflects sustained execution of system design, embedded hardware development, propagation analysis, and field validation across aviation, federal, and industrial environments.

8. The United States Navy is one of many customers that benefit from RTV's services. For example, the Navy uses Flight Readiness Centers ("FRC") to repair and maintain all aircraft under its control. At FRCs, it is critical that the Navy be able to track its materials, parts, and tools at all times. As the Navy explains, the goal of the FRC is "to give our nation's warfighters the highest quality airframes, engines, components and services on time and at the best value." For the Navy to achieve this goal, it requires custom tracking solutions in a complex environment. But to build a solution at an FRC is a highly technical task, necessitating incredible attention to detail and precision given the presence of valuable equipment critical to serving the Navy's mission.

9. Defendants Shipcom Federal and Shipcom Wireless (collectively, "Shipcom") purport to deliver, among other services, asset management solutions for its customers. Shipcom relies on subcontracted companies like RTV to fulfill their role with government customers like the Navy.

10. In 2021, Shipcom contacted RTV to assist with a nationwide project at the Navy's FRCs in North Carolina, Florida, and California. Subsequently, Shipcom engaged RTV to conduct accurate geospatial localized site surveys for three FRC sites, and then design, procure, and deliver a compliant technology hardware solution to support enterprise-wide digital tracking and tracing of assets and transportation equipment.

11. As an engineering integrator deploying RF-based technologies within government aviation and depot environments, RTV must design and implement systems within a unified compliance framework. In this case, RTV was tasked with identifying compliant equipment and developing deployment strategies that included addressing significant safety concerns. At Shipcom's request, across three FRC locations, RTV conducted detailed RF spectrum analyses to ensure that proposed RFID technology would not interfere with existing devices, materials, or hazardous and sensitive assets. RTV created, for example, siting plans, grounding and bonding methods, and path analyses that closed interference gaps. These were engineering tasks that Shipcom had neither the expertise nor the capability to perform, and RTV's involvement made ultimate delivery to the Navy possible. While Shipcom's software

can display information such as interrogated tag reads, the engineering integration burden—borne by RTV—made those reads meaningful and supportable.

12.     RTV's efforts went beyond the preliminary hardware evaluations conducted by NAVAIR Cyber Security, COMFRC Physical Security, and NOSSA's electromagnetics branch. The culmination of RTV's work was intended to establish a framework for continual RF auditing to ensure ongoing safety compliance and quality management after system installation. However, this ongoing auditing component—requiring a multi-disciplinary engineering team—was never completed and remains a major outstanding requirement of the Project due to Shipcom's breach of contract(s).

13.     Between 2021 and 2024, without a written agreement but at Shipcom's request, RTV operated in good faith with Shipcom to obtain several Small Business Innovation Research ("SBIR") grants that were necessary to move forward with the FRC project. Before engaging with Shipcom, RTV had established a successful history of providing quality services for the Navy.

14.     Through a mutual party, RTV and Shipcom connected during SBIR Phase II. At this particular stage, the project had stalled because of an attempt to use non-compliant equipment and other critical issues. Based on its familiarity with the Navy and understanding of its requirements and objectives, RTV's involvement provided a level of competency that had been missing from the endeavor.

15.     Moving out of Phase II, RTV worked with Shipcom to understand and develop a plan based on the Navy's request for SBIR Phase III. The Navy, working with RTV, significantly changed the design and understanding of a blended approach

of technologies, ultimately leading to the award of the Phase III SBIR grant to Shipcom. In other words, without RTV's involvement, Shipcom likely would not have obtained SBIR funds nor would it have secured the project at issue.

16.    In May 2024, Shipcom presented RTV with a Subcontract Agreement. Shipcom told RTV that it was in the process of negotiating an agreement with the Navy and it anticipated being awarded a prime contract that necessitated RTV's involvement as a subcontractor. The Subcontract Agreement was executed on May 13, 2024.[1]

17.    The scope of work under the Subcontract Agreement, drafted solely by Shipcom, was not defined. Neither was the value or place of performance defined. However, in the course of their discussions, Shipcom asked RTV to perform site surveys at FRC East, FRC West, and FRC South and design a solution that could be implemented for the Navy. At a high level, the plan was for RTV to perform site surveys using Light Detection and Ranging ("LiDAR") equipment, analyze the surveys, create a customized solution based on the Navy's operational requirements, and then implement that solution.

18.    Because many key terms in the Subcontract Agreement were not defined at execution, RTV and Shipcom agreed to renegotiate the Subcontract Agreement once Shipcom reached an agreement with the Navy. As explained below, Shipcom failed to negotiate a subsequent agreement in good faith and, instead, relied on course of dealing with RTV to continue with the project.

---

[1] The Subcontract Agreement contains a confidentiality provision but will be provided to the Court at the appropriate time.

19. On or about June 26, 2024, after executing the Subcontract Agreement with RTV, Shipcom entered into Prime Contract No. N68335-24-F-0065 with the United States of America through the Navy to identify, design, and install systems, including hardware and equipment, necessary to track ground support equipment in FRCs located at Cherry Point, NC, Jacksonville, FL, and San Diego, CA (the "Project").

20. Shipcom at all times was the prime contractor on the Project.[2] RTV was at all times a first-tier subcontractor on the Project.

21. Despite multiple requests from RTV following execution of the Prime Contract, Shipcom did not amend the Subcontract Agreement, leaving critical information "to be determined" by the parties' course of dealing.

22. The course of dealing played out over many months, where Shipcom would demand work from RTV in connection with the Project. RTV would perform the work as requested, though Shipcom's demands frequently changed on short notice. When RTV sought payment, Shipcom required that the invoices, whether for products or services, be tied to a purchase order ("PO") issued by Shipcom. But Shipcom would delay or otherwise avoid issuing POs for the work it requested, which was provided and accepted. As a result, RTV could not timely invoice Shipcom according to the procedure Shipcom wanted, solely because of Shipcom's inaction.

---

[2] Though Shipcom Federal executed the Subcontract Agreement and is believed to have executed the Prime Contract, Shipcom Wireless employees were often in charge of issuing instructions and controlling the work performed by RTV. Shipcom Wireless's leadership team was involved in dispute resolution negotiations and spoke on behalf of Shipcom Federal.

23.     For example, the Project required coring and boring work. At the time of execution of the Subcontract Agreement, RTV understood that coring and boring work would be handled by the government. Instead, Shipcom requested that RTV handle all coring and boring on the Project. The associated task requests were verbally issued and no POs were provided. When it came time to bill the tasks associated with coring and boring work, Shipcom claimed that since it issued no PO to bill against—a barrier Shipcom created—RTV's invoices would not be paid.

24.     To avoid the Project coming to a standstill, and the Navy suffering as a result, RTV continued to deliver products and services with the good faith belief that Shipcom would honor its obligations, pay for the work it requested and received, and do so moving forward.

25.     In real time, Shipcom never complained to RTV about the quality of RTV's work, and Shipcom never rejected RTV's delivery of products or services.

26.     Among the many services RTV delivered, which Shipcom requested either verbally or in writing, included but not limited to the following:

a.    AS9100-series expectations for configuration control, document traceability, and risk management in an aviation MRO (Maintenance, Repair, and Operations) context. These are mandatory controls and policies over configuration management, product identification, traceability, risk management, supplier oversight, corrective action, and lifecycle documentation integrity within the MRO environment. It provides assurances against counterfeit insertion, configuration drift, quality escape of non-conforming materials, undocumented substitutions, and regulatory exposure;

b.    NAS412 practices supporting contamination foreign object debris and damage prevention in how assets are tagged and handled around aircraft and tooling. When coupled with documented personnel qualification, technique validation, and equipment control, these practices create accountability among responsible authorities;

c.  E3/HERO/HERP/HERF constraints and NOSSA coordination for radiating equipment; spectrum authorization prior to energizing devices in depot spaces IAW OPNAV INSTRUCTION 2400.20G. This ensures that radiating equipment does not introduce ignition risk, unintended ordnance initiation energy, fuel vapor hazards, or unsafe RF exposure levels within a controlled zone; and

d.  Depot hazardous-location controls (gaseous vapor environments in maintenance facilities) and site industrial safety expectations (e.g., VPP participation and adherence). Any RF-emitting or RF-supporting infrastructure must be evaluated for various controls and considerations to ensure equipment deployment does not introduce dangerous, unintended consequences in maintenance spaces.

27.  From the surveys it performed, RTV prepared drawings that Shipcom and the Navy relied upon to advance system deployment. It was RTV that provided services that allowed planning and execution of the Project to move forward. RTV's engineering deliverables were necessary for the Project, acknowledged by both Shipcom and the Navy in planning, and subsequently requested by Shipcom.

28.  Before engaging in most of this work, RTV worked with Shipcom to put together rough order of magnitude pricing using methodologies and level of effort details following execution of the Subcontract Agreement. Thus, because of RTV's diligence, approximate costs and estimates were known by Shipcom when they asked for work to be performed.

29.  Critically, because much of RTV's work required onsite performance or presence—sometimes not requested until the last minute—a portion of the outstanding invoices include travel expenses that Shipcom ultimately refused to pay.

30.    The products and services provided, including travel and interest, were invoiced to Shipcom between May and December 2025. Exhibit 1.[3] The work associated with these invoices was requested—orally, in writing, or both—by Shipcom, accepted by Shipcom, and remains unpaid as of this filing.

31.    In July 2025, Shipcom, through its Executive Vice President, Mustafa Tyebbhoy, acknowledged a pattern had been created that put RTV at risk going forward. But Shipcom failed to fully correct its inability to timely issue POs before demanding work, notwithstanding its promises.

32.    The arrangement ultimately became untenable. RTV could no longer continue delivering millions of dollars' worth of products and services without remuneration. Shipcom had created an existential crisis for RTV. It is unreasonable to demand RTV work itself into bankruptcy while Shipcom repeatedly refused to make payments for products and services it requested and subsequently accepted.

33.    Sensing an escalation in RTV's unwillingness to continue with this structure, Shipcom's plan shifted. Relying on RTV's plans and schematics, Shipcom began contacting second-tier subcontractors and other integrator companies in an effort to replace and effectively cut RTV out of the Project. More specifically, and by way of example only, RTV was contacted by its vendor Senthys with concerns that Shipcom was making fundamental changes to the scope of the Project—and Senthys' involvement in it—without aligning with RTV. Discovery is needed to determine if Shipcom's strategy all along was to fraudulently steal RTV's Intellectual Property

---

[3] The invoices attached here constitute remaining unpaid invoices as revised over time during failed negotiations with Shipcom to obtain payment.

with the intent all along to not pay for substantial amounts of materials and services provided by RTV and leverage its acquired Intellectual Property to push RTV out of the project and replace it with other companies.

34.     Finally, in September 2025, RTV had little choice but to inform Shipcom it was temporarily suspending services until payment was made, but that it would continue to perform work once the long-standing issues were addressed, including payment of outstanding invoices. This was not a minor dispute under the Subcontract Agreement and course of dealing, but one that threatened RTV's very existence.

35.     Instead of paying, Shipcom terminated the Subcontract Agreement on October 13, 2025, falsely claiming that RTV had simply "walked away" from the job without justification. On information and belief, Shipcom wrongfully converted the Property and/or Intellectual Property and/or provided third-parties access to such property for continued use on the Project and perhaps others.

36.     In December 2025, RTV issued all remaining invoices, including invoices that had been held up by Shipcom's refusal to deliver timely POs. Over subsequent months, RTV revised the invoices to address purported concerns Shipcom had with them, ultimately agreeing to pay a couple invoices but rejecting all others. To date, Shipcom has failed to accept responsibility for payment of RTV's invoices, which included exhaustive information regarding the work represented by the invoices, and refused to further engage in good faith negotiations.

37.    The remaining unpaid invoices that serve as the basis of this Complaint are the following: Invoice Nos. 200510;[4] 200525; 200565; 200437-2; 200570; 200555; 200575; 200530; 200540; 200550;[5] 200560; and travel invoices. The total of outstanding invoices, plus interest, is $4,574,577.92.

38.    Meanwhile, since being locked out of FRC East, products developed and/or purchased by RTV remain onsite and inaccessible to RTV. RTV used its own proprietary and confidential methodologies to assimilate, combine, and utilize various tools and methods that resulted in the transfer of certain intellectual property owned by RTV ("Property") to Shipcom conditioned on payment for same. Such Property remains onsite in "the Lab" at FRC East and is among the products being withheld by Shipcom. Shipcom has refused to return the Property. Because Shipcom has retained control over RTV's Property, RTV cannot use it, either in the Project or other projects. In addition, on information and belief, Shipcom is using the Property for its own benefit, including at demonstrations as recently as March 2026, and unless restrained from further use, will continue to deploy RTV's proprietary, confidential, and/or intellectual property in further projects.

39.    Given Shipcom's unwillingness to make timely payment of past due invoices, RTV is at a loss to understand how federal funds allocated for the Project are actually being spent. Shipcom should have the money to pay, as it was awarded

---

[4] Shipcom previously said it would pay this invoice, but payment has not been received as of the date of this filing.

[5] In Shipcom's latest communication dated May 1, 2026, it ostensibly agreed to pay this invoice conditioned upon a demand for even more information, but as of the date of this filing, the invoice remains unpaid.

tens of millions for the Project. Yet, RTV's invoices remain outstanding. It is believed that Shipcom has previously engaged in a scheme designed to ultimately defraud the US Government for its own benefit. *See United States of America, ex re. Rene Carnes, and Rene Carnes, Individually v. Shipcom Wireless, Inc.*, Case No. 1:16-cv-202-EGS, in the United States District Court of the District of Columbia. If Shipcom is engaged in a similar scheme here, it would explain why payments were not timely made— because they were being squandered by Shipcom as they may have in the past.

40.     To date, after numerous letters back and forth between RTV and Shipcom counsel, RTV has only received partial payment for products and services, and there remains the amount of $4,574,577.92 that is due and unpaid. RTV is entitled to payment of $4,574,577.92 from Shipcom, with interest.

## COUNT ONE - BREACH OF CONTRACT

41.     RTV incorporates the foregoing allegations as if fully set forth herein.

42.     RTV entered into the Subcontract with Shipcom under which it agreed to provide labor and materials for the Project. The terms of that agreement were supplemented by ongoing collaboration, direct requests from Shipcom, provision of requested materials and services, and a course of dealing spanning many months. Labor and materials were provided by RTV as requested. Shipcom has breached the Subcontract and/or course of dealing by failing to provide payment for labor performed and materials provided by RTV, including related travel expenses.

43.     Shipcom's breach of the Subcontract has caused RTV to suffer actual, incidental, and consequential damages for which it seeks judgment against Shipcom.

44.    All conditions precedent have been performed by RTV, including good faith negotiations that have failed to resolve the dispute.

## COUNT TWO – IMPLIED CONTRACT

45.    RTV incorporates the foregoing allegations as if fully set forth herein.

46.    Without waiving the foregoing and pleading in the alternative, RTV would show that it entered into implied contracts with Shipcom under which RTV supplied labor and materials to Shipcom for the Project. Shipcom agreed to pay RTV for such labor and materials.  RTV would never have agreed to provide labor and materials without payment.

47.    Although RTV has fully performed and demanded payment, Shipcom has failed to pay, harming RTV. Shipcom's actions have caused RTV to incur actual, incidental, and consequential damages for which it seeks judgment against Shipcom.

48.    All conditions precedent have been performed by RTV.

## COUNT THREE - UNJUST ENRICHMENT/QUANTUM MERUIT

49.    RTV incorporates the foregoing allegations as if fully set forth herein.

50.    Without waiving the foregoing and pleading in the alternative, RTV provided labor and materials to Shipcom for the Project, and Shipcom knowingly accepted the labor and materials provided by RTV. The labor and materials provided by RTV were of great benefit to Shipcom, and Shipcom would be unjustly enriched if it were not required to pay for such labor and materials. Although requested by RTV to pay the outstanding amounts due, Shipcom has refused to do so and, after months of attempted negotiations, continues to refuse to do so.

51.    RTV is entitled to reimbursement for the reasonable value of the labor and materials provided by RTV under the theory of quantum meruit. The reasonable value for such labor and materials is $4,574,577.92, for which RTV seeks judgment against Shipcom.

## COUNT FOUR - CONVERSION

52.    RTV incorporates the foregoing allegations as if fully set forth herein.

53.    RTV has a right to possession of its materials and products held by Shipcom onsite at FRC East, which RTV provided and/or paid for in anticipation of completing its work on the Project.

54.    Since terminating the Subcontract Agreement, Shipcom has retained possession of the materials and products RTV provided, which remain unpaid by Shipcom. Specifically, Shipcom has unlawfully exercised dominion and control over RTV's property, and may have allowed wrongful third-party access and use to such property, which is identified in attached Exhibit 2.

55.    Shipcom's actions were the proximate cause of RTV's damages.

56.    As a direct and proximate result of Shipcom's conversion, RTV suffered damages in an amount to be determined at trial.

## COUNT FIVE – THEFT OF SERVICES

57.    RTV incorporates the foregoing allegations as if fully set forth herein.

58.    RTV provided labor and professional services to Shipcom as described herein. Shipcom knew that the services were provided only in exchange for compensation. However, by repeatedly seeking service without issuing POs, and then

refusing to pay because services were rendered without a PO, Shipcom demonstrated its intent to avoid paying for the services it requested. Despite knowing that RTV was working for monetary compensation, and acknowledging the RTV delivered services in exchange for compensation, Shipcom still refused to make payment after it was demanded.

59.    Shipcom's actions were the proximate cause of RTV's damages.

60.    As a direct and proximate result of Shipcom's theft, RTV suffered damages in an amount to be determined at trial.

## COUNT SIX – MISAPPROPRIATION OF INTELLECTUAL PROPERTY

61.    RTV incorporates the foregoing allegations as if fully set forth herein.

62.    In the course of performing its obligations under the Subcontract Agreement and the parties' course of dealing, RTV developed and utilized proprietary and confidential methodologies, processes, and technical know-how, including but not limited to: RF spectrum analyses and propagation studies; geospatial site survey data obtained through LiDAR scanning; siting plans, grounding and bonding designs, and path analyses; custom hardware configurations and embedded systems architecture; engineering drawings, schematics, and deployment strategies; and AS9100-series compliance frameworks, contamination prevention protocols, and electromagnetic safety analyses tailored specifically for the Navy's FRC environments (collectively, the "Intellectual Property").

63.    RTV's Intellectual Property constitutes trade secrets and confidential, proprietary information. RTV derived independent economic value from its

Intellectual Property not being generally known to, or readily ascertainable by, others who could obtain economic value from its disclosure or use. RTV took reasonable measures to maintain the secrecy of its Intellectual Property, including limiting access to authorized personnel, maintaining proprietary development environments, and relying on the confidentiality provision of the Subcontract Agreement.

64.     Shipcom obtained access to RTV's Intellectual Property solely through the parties' working relationship on the Project. RTV disclosed its Intellectual Property to Shipcom in confidence and for the limited purpose of performing the Project. RTV did not authorize Shipcom to use, copy, distribute, demonstrate, or otherwise exploit RTV's Intellectual Property for any purpose beyond the scope of RTV's involvement in the Project.

65.     Despite the confidential and limited nature of its access, Shipcom has misappropriated RTV's Intellectual Property by, among other things: (a) retaining physical possession of RTV's proprietary hardware, custom configurations, and engineering materials at FRC East after terminating the Subcontract Agreement and refusing to return such property; (b) using RTV's proprietary engineering deliverables, including drawings, schematics, and deployment plans, to continue the Project without RTV's involvement or consent; (c) sharing or disclosing RTV's proprietary designs and plans to third-party subcontractors and integrator companies in an effort to replace RTV on the Project; and (d) on information and belief, demonstrating and displaying RTV's proprietary Property to third parties,

including at demonstrations as recently as March 2026, for Shipcom's own commercial benefit.

66. Shipcom's misappropriation was willful and malicious. Shipcom knew that RTV's Intellectual Property was proprietary and confidential, and that its continued use, retention, and disclosure were unauthorized. Shipcom nonetheless deliberately retained and exploited RTV's Intellectual Property for its own benefit and to RTV's detriment.

67. As a direct and proximate result of Shipcom's misappropriation of RTV's Intellectual Property, RTV has suffered and continues to suffer damages, including but not limited to the loss of the economic value of its proprietary work product, the inability to use its own Intellectual Property on the Project or other projects, and competitive harm resulting from the unauthorized disclosure and use of its trade secrets. RTV seeks actual damages, unjust enrichment damages, exemplary damages for willful and malicious misappropriation, and reasonable attorneys' fees pursuant to the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 et seq.

## ATTORNEYS' FEES

68. RTV incorporates the foregoing allegations as if fully set forth herein.

69. RTV has been required to obtain legal counsel to institute and prosecute this action because Shipcom committed the improper actions referenced herein and breached the Subcontract. RTV is entitled to recover its reasonable and necessary attorneys' fees and expenses as compensation against Shipcom pursuant to Section

38.001 et seq. of the Texas Civil Practice and Remedies Code. RTV is entitled to recover its attorneys' fees through and including the trial of this case, plus all post-verdict and post-judgment motions, as well as all appeals and appellate steps taken in connection with this matter.

**INTEREST**

70.     RTV is entitled to pre-judgment and post-judgment interest on all damages it has incurred in this matter.

**CONDITIONS PRECEDENT**

**71.**     All conditions precedent to RTV's entitlement to judgment for its claims and causes of action have occurred, or have been satisfied, waived, or excused.

**VERIFIED APPLICATION FOR PRELIMINARY INJUNCTION**

72.     RTV incorporates the foregoing allegations as if fully set forth herein.

73.     Shipcom is holding and using RTV's Property, which contains and reflects the Intellectual Property developed and deployed by RTF, or bought and/or paid for by RTV, for which RTV has not been compensated.

74.     Shipcom will not return RTV's Property, despite RTV's rightful title to it and demand for its return. Absent injunctive relief, Shipcom will continue to exercise control over the Property and is, and will be in a position to continue, using the Property going forward, violating RTV's Intellectual Property rights.

75.     A party is entitled to a preliminary injunction upon showing: "(1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to

enjoin, and (4) that granting the preliminary injunction will not disserve the public interest." *Defense Distributed v. U.S. Department of State*, 838 F.3d 451, 456-57 (5th Cir. 2016). These elements are also met here based upon the facts alleged and verified herein.

76.     Moreover, Shipcom's conduct, together with a potentially declining financial state as indicated above, establishes it will likely hide, harm, sell or destroy the Property, thereby preventing RTV from adequately recovering its monetary damages. This favors injunctive relief. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (finding that the "dissipation of assets…would impair the court's ability to grant an effective remedy."); *see also*, *Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992, 2017 WL 3209522, 2017 Dist. LEXIS 174549 at *9 (N.D. Tex. 2017) (finding irreparable injury where plaintiff's rights would be "forever lost" if indemnitors disposed collateral assets or lacked ability to pay a judgment."). Shipcom has, on information and belief, been using the Property in demonstrations and perhaps marketing it for sale.

77.     Shipcom continuing to hold, use, transport, demonstrate, transfer, and/or potentially sell the Property, particularly the Intellectual Property, will result in substantial loss to RTV, which is unascertainable at this point in time, and future economic loss which is presently incalculable, especially given fluctuations in the economy.

78.     RTV has no adequate remedy at law for the present holding and/or use of the Property and/or Intellectual Property, which RTV has title, as money damages are not adequate to compensate for the present and ongoing harm caused by same.

79.     The public interest favors entry of an injunction to uphold the sanctity of contract and protect the legitimate interests of RTV and the public at large. While RTV is willing to post a bond to support injunctive relief, it submits the bond required should be nominal given the overarching interest RTV has in the Property. Shipcom, by contrast, has no property interest in it.

80.     RTV has a clear legal right to the requested injunctive relief.

WHEREFORE, for the foregoing reasons, RTV Engineering, Inc. requests that Shipcom Federal and Shipcom Wireless be cited to appear and answer, and that upon final hearing or trial, that the Court enter judgment against Shipcom Federal and Shipcom Wireless, jointly and severally, in favor of RTV for all actual damages, incidental damages, consequential damages, expenses, attorneys' fees, interest, pre-judgment interest, post-judgment interest, and costs of Court. RTV further requests that this Court enter an injunction prohibiting Shipcom from further deployment or use of RTV's Property in the Project or any other.

Dated:          May 4, 2026

By: *John K. Edwards*

JOHN K. EDWARDS
Attorney in Charge
jedwarde@jw.com
S.D. Texas Bar No. 21645
Texas State Bar No. 24002040
GABRIELA M. BARAKE
S.D. Texas Bar No. 3006704
Texas State Bar No. 24099794
gbarake@jw.com
MICHAEL A. DRAB
S.D. Tex Bar No. 3665349
Texas State Bar No. 24115826
mdrab@jw.com

JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200

**ATTORNEYS FOR PLAINTIFF
RTV ENGINEERING, INC.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RTV ENGINEERING, INC. | § § § | |
| *Plaintiff,* | § § § | |
| vs. | § § § | CASE NO. 4:26-cv-03600 |
| SHIPCOM FEDERAL SOLUTIONS, LLC and SHIPCOM WIRELESS, INC. | § § § § | |
| *Defendants.* | § § | |

**<u>DECLARATION OF ROBERT T. VEIGA</u>**

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | § | |
| | § | |
| COUNTY OF CARTERET | § | |

My name is Robert T. Veiga, my date of birth is May 6, 1968 and my address is 130 Atlas Lane, Satellite Beach, FL 32937. I am the Chief Executive Officer of RTV Engineering, Inc., and an authorized representative of RTV Engineering, Inc. for purposes of this Declaration.

I have read the foregoing Plaintiff's Original Complaint, and affirm that the factual statements contained in Paragraphs 35, 38, 62-65, 73-74, and 77 are true and correct, based upon my personal knowledge, and the records and information available to me through my duties with RTV Engineering, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: May 4, 2026

_____
Robert T. Veiga